THOMAS P. O'BRIEN
Assistant United States Attorney
CHRISTINE C. EWELL
Chief, Criminal Division
ARIEL A. NEUMAN (SBN 241594)
Assistant United States Attorney
General Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, CA  90012
    Telephone: (213) 894-2917
    Facsimile: (213) 894-6436
    E-Mail: ariel.neuman@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-1360-SVW |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | [21 U.S.C. §§ 841(a)(1), (b)(1)(iii), (b)(1)(C): Distribution of Cocaine and Cocaine Base] |
| CARLOS IVAN CUENTAS, aka "Snoopy," | |
| Defendant, | Trial Date:  April 1, 2008<br>Time:        9:00 a.m<br>Place:       Courtroom of the<br>             Hon. Stephen V. Wilson |

Plaintiff, United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its Trial Memorandum.  The

///
///
///
///

government may submit additional memoranda, if appropriate, to address issues that may arise at trial.

Dated: March 25, 2008        Respectfully submitted,

THOMAS P. O'BRIEN  
United States Attorney

CHRISTINE C. EWELL  
Assistant United States Attorney  
Chief, Criminal Division

      /s/  
ARIEL A. NEUMAN  
Assistant United States Attorney  
General Crimes Section

Attorneys for Plaintiff  
United States of America

2

**GOVERNMENT'S TRIAL MEMORANDUM**

Plaintiff, the United States of America, hereby submits its trial memorandum in this case.

### I. STATUS OF THE CASE

A.  Trial against defendant Carlos Ivan Cuentas is scheduled to commence on April 1, 2008 at 9:00 a.m. before the Honorable Stephen V. Wilson, United States District Judge.

B.  The estimated time for the government's case-in-chief is approximately one to two days.

C.  Defendant is in custody.

D.  Defendant has not waived trial by jury.

E.  Barring stipulations, the government intends to call approximately 5 witnesses in its case-in-chief. They include the case agent, another law enforcement officer who is also a narcotics expert, a confidential source, a Spanish linguist, and a DEA chemist. The government has proposed stipulations regarding the accuracy of the transcripts and translations of the video and audio recordings which are evidence in this case, and regarding the testing of the drugs which are evidence in this case. Defendant has indicated that he will not sign any stipulations regarding the drugs, but will most likely sign a stipulation regarding the accuracy of transcripts and translations. Such a stipulation would obviate the need for the testimony of the Spanish linguist.

## II. THE INDICTMENT

The Indictment charges 2 counts as follows:

| COUNTS | CHARGE |
|---|---|
| 1 | Distribution of Cocaine, 21. U.S.C. § 841(a)(1), (b)(1)(C) |
| 2 | Distribution of Cocaine Base, 21 U.S.C. § 841(a)(1), ((b)(1)(B)(iii) |

A true and correct copy of the Indictment is attached hereto as Exhibit A. The elements for these offenses are set forth in Section IV of this memorandum.

## III. STATEMENT OF FACTS

In early 2006, a confidential source ("CS") began working with the Federal Bureau of Investigation ("FBI") on the FBI's investigation of criminal activity, including the distribution of drugs, in the Hollywood area of Los Angeles. Both the CS and law enforcement had information that defendant Carlos Ivan Cuentas ("defendant") was involved in the distribution of narcotics. Specifically, prior to the charged incidents, defendant discussed drugs and drug distribution with the CI, provided the CI with drugs, and packaged drugs in the CI's presence or with his knowledge.[1]

---

[1] This testimony is not "other crimes, wrongs, or acts" pursuant to Fed. R. Evid. 404(b), but rather is inextricably intertwined with the facts of the instant case as part of the first transaction and necessary in order to allow the government to tell a coherent story as to how the CS knew he could obtain drugs from defendant. United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004)(Ninth Circuit has recognized two categories of evidence that may be considered inextricably intertwined with a charged offense and therefore admitted without regard to Rule 404(b): (1) when the evidence constitutes a part of the transaction that serves as the basis for the criminal charge; and (2) when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding

1    In March 2007, in Los Angeles, California, defendant asked
2 the CS whether he was interested in purchasing "the stuff," which
3 the CS understood to mean cocaine.  On April 4, 2007, defendant
4 knowingly and intentionally sold 13.7 grams of cocaine for $500
5 to a confidential source ("CS") working with the Federal Bureau
6 of Investigation ("FBI"). Specifically, on April 3, 2007, after
7 arranging to sell the CS four 1/8 ounce baggies of cocaine,
8 defendant met the CS at the CS' residence, in an encounter that
9 was surveilled by FBI agents and recorded via audio and video
10 recordings.  During the meeting, the CS gave defendant $500, and
11 defendant left to obtain the cocaine.  Defendant could not obtain
12 any cocaine and eventually returned the $500 to the CS.  The
13 government intends to introduce three video excerpts of the video
14 taken on April 3, 2007, with a total approximate running time of
15 4.5 minutes.

16    On April 4, 2008, defendant met the CS at the CS' residence,
17 in an encounter that was surveilled by FBI agents and recorded
18 via audio and video recordings.  The CS again gave the defendant
19 $500 in order to procure four 1/8 ounce baggies of cocaine.
20 Approximately three hours later, when defendant returned to the
21 CS' residence to meet with the CS, defendant gave the CS a
22 plastic bag.  The plastic bag contained four smaller baggies,
23 each containing a mixture or substance containing a detectable

---

the commission of the crime); <u>United States v. Daly</u>, 974 F.2d 1215, 1216 (9th Cir. 1992) (evidence is not subject to Rule 404(b), and is admissible when it is necessary "to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime").  Counsel for defendant has been notified of this evidence and has indicated he may file a motion <u>in limine</u> to exclude it.

3

amount of cocaine. Based on the conversations he had with the CS, defendant knew that the substance he gave to the CS was cocaine. DEA laboratory analysis of the substance confirmed that it contained cocaine and determined that it weighed 13.7 grams. The government intends to introduce into evidence a one minute audio recording of a voicemail message left for the defendant by the CS on April 4, 2007, as well as several video excerpts of the video taken that day, with a total approximate running time of 12 minutes.

On July 10, 2007, in Los Angeles, California, defendant knowingly and intentionally sold to the same CS, who was again working with the FBI, 45.0 grams of cocaine base in the form of crack cocaine for $2,000. Specifically, on July 10, 2007, after arranging to sell the CS $2,000 worth of crack cocaine, defendant met the CS at defendant's residence, located at 5522 Sierra Vista Avenue in Los Angeles, California, in an encounter that was surveilled by FBI agents and recorded via video and audio recording. During the meeting, the CS gave defendant the $2,000 to which they had agreed, and defendant left to obtain the crack cocaine. The CS then waited in a nearby Burger King for defendant to return. Law enforcement officers observed defendant approach a car empty-handed, and then walk away holding a box. Defendant then spoke with the CS and told him he had obtained the crack. Law enforcement officers then observed the defendant give the box to the CS. The CS left the area and then provided law enforcement officers with a Motorola cellular telephone box containing 45.0 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine

4

which he had obtained from the defendant.  DEA laboratory analysis of the substance confirmed that it contained cocaine base and determined that it weighed 45.0 grams.  The government intends to introduce into evidence a one and a half minute recording of a phone call made by the CS on July 9, 2007, a one minute recording of a phone conversation between the CS and defendant which took place on July 10, 2007,  well as several video excerpts of the video taken that day, with a total approximate running time of 9 minutes.

Prior to committing this offense, defendant had previously been convicted of the following felony drug offenses under the laws of the State of California: (1) on or about August 29, 2001, in Case No. BA211428 in the Superior Court for the County of Los Angeles, defendant was convicted of possessing a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a); and (2) on or about November 7, 1994, in Case No. BA074798 in the Superior Court for the County of Los Angeles, defendant was convicted of possessing a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a).  On February 7, 2008, the government filed an information pursuant to 21 U.S.C. § 851 charging defendant with these prior offenses.

### IV. **LEGAL AND EVIDENTIARY ISSUES**

The primary evidence against the defendant is 1) the video recordings taken by the CS on April 3, April 4, and July 10, 2007; 2) the testimony of the case agent and the CS regarding defendant's distribution of the drugs; 3) the testimony of an LAPD detective who surveilled the defendant on July 10, 2007, and

5

1  observed him obtain and hand over the box which contained the
2  crack cocaine; 4) the expert testimony of LAPD detective Thomas
3  Penson regarding code language used by drug dealers and the
4  operations of street-level dealers; and 5) the chemical analysis
5  of the cocaine and crack cocaine which defendant sold to the CS.
6  The following are some evidentiary issues of note.

A.   Section 851 Sentencing Enhancement

Defendant has not yet been arraigned on the § 851 sentencing enhancement.  The government requests that prior to the commencement of trial, the Court formally advise defendant of the filing of the  § 851 sentencing enhancement, and advise him of his right to contest it prior to sentencing, should he be convicted.

B.   Video and Audio Evidence

The evidence in this case includes video and audio surveillance files.  These files contain Spanish language conversations which have been translated by a qualified translator.  Finalized transcripts have been provided to defense counsel; thus far he has raised no objections to the transcriptions or translations.  The government has proposed a stipulation regarding the accuracy and admissibility of the transcripts and translations which defendant has indicated he will most likely sign.

When recordings and transcripts to be presented at trial are in Spanish, both the recordings and the transcripts are admissible as evidence. it is the recordings themselves that are the evidence of the conversation.  See, e.g., U.S. v. Franco, 136

6

1  F.3d 622, 626 (9th Cir. 1998); U.S. v. Fuentes-Montijo, 68 F.3d
2  352, 354 (9th Cir. 1995).
3      Here, the video and audio surveillance files contain many
4  hours of surveillance footage.  In order to save time and
5  expedite the jury's viewing of the evidence, the government
6  intends to introduce and play only relevant excerpts.
7  Specifically, there are three videos which the government intends
8  to offer into evidence.  From those videos, the government
9  intends to show approximately 18 excerpts to the jury, with a
10 total approximate running time of 26 minutes.  In addition, the
11 government intends to offer into evidence 3 audio recordings.
12 Each contains an excerpt from a recording of multiple recorded
13 phone calls; however, the government intends to introduce and
14 play only 3 phone calls for the jury, with a total approximate
15 playing time of 5 minutes.
16     The government will prepare excerpted transcripts and place
17 them in binders for the Court, jurors, and defense counsel.
18 Defense counsel has had an opportunity to review the transcripts
19 and has thus far raised no objections to either the Spanish
20 transcriptions or English translations therein.
21     In order to expedite the playing of the video and audio
22 files, the government will have the files on its own laptop
23 computer.  These files will be in a different computer file
24 format (e.g., .avi files as opposed to .mpg files), but will be
25 exact copies of the files entered into evidence.
26     Finally, the government intends to offer into evidence
27 photographs which constitute still-shots from the video files.
28

1  These photographs have been provided to defendant and thus far he
2  has raised no objections.
3  C.   ATPM
4       During trial, the government intends to present the video
5  excerpts, after establishing foundation and introducing the video
6  excerpts into evidence, via the Advanced Transcript Presentation
7  Manager ("ATPM").  ATPM is a computer program that can be loaded
8  with the video excerpt and the transcript such that the English
9  transcript appears on a television screen and scrolls along with
10 the video as it is played.  It is done for the ease of the jury
11 in following along with the audio.  The evidence of the video
12 excerpts will still be the videos and English translations; the
13 ATPM will be demonstrative only.  If the court would like, the
14 government can demonstrate the ATPM program prior to trial.
15 Defendant counsel has indicated he has no objection to the use of
16 ATPM in this case.
17 D.   Expert Witnesses
18      Barring stipulations, the government will offer the
19 testimony of three expert witnesses.  Their names,
20 qualifications, and areas of testimony were e-mailed to defense
21 counsel on the morning of March 19, 2008.  Specifically, they are
22 1) C. Dinora Rodriguez, a Certified FBI Spanish Linguist; 2) LAPD
23 Detective Thomas Penson, a narcotics expert; and 3) Michael
24 Brousseau, a DEA forensic chemist.  Defendant has raised no
25 objection to the expected testimony of these witnesses thus far.
26 As noted above, the government has proposed stipulations which
27 would obviate the need for the testimony of Ms. Rodriguez and Mr.
28 Brousseau.  Defendant has indicated that he may sign the

8

stipulation which would obviate the need for the testimony of Ms. Rodriguez, but that he will not sign any stipulations regarding the drugs.

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.

As to Detective Penson's testimony, testimony by an expert witness to explain the meaning of code words used by the defendant during video-taped conversations which the government intends to play to the jury is also permissible.  See United States v. Plunk, 153 F.3d 1011, 1017 (9th Cir.) (district court did not abuse its discretion by permitting police detective to provide expert testimony regarding general usage of cryptic terminology by drug dealers and to interpret encoded conversations), amended on other grounds, 161 F.3d 1195 (9th Cir. 1998).  Of course, a participant in a drug-related conversation may also properly testify regarding his understanding of statements made to him by the defendant.  United States v. Brooks, 473 F.2d 817, 818 (9th Cir. 1973) (per curiam).  A participant in a drug-related conversation may also testify as to the meaning of coded drug language used in the conversation.  United States v. Astride, 39 F.3d 772, 773 (7th Cir. 1994).

E.   Exhibits

Two of the exhibits in this case constitute contraband, namely, cocaine and cocaine base in the form of crack cocaine. Pursuant to the Court's Order re: Criminal Trial Preparation,

these exhibits will remain in the custody of FBI Special Agent Roberto Basteris during the pendency of the trial.

F.  Defendants' Statements

The government may offer as evidence at trial certain inculpatory statements made by the defendant. These statements may be introduced through the video and audio evidence, and/or through the testimony of a witness.[2] These statements are not hearsay because they constitute party admissions under Federal Rule of Evidence 801(d)(2).

However, a defendant's prior statement is admissible only if offered against him or her; a defendant may not elicit his or her own prior statements, either through defense witnesses or by cross-examination of government witnesses. To permit otherwise would place a defendant's statements "before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (district court properly granted the government's motion in limine to exclude introducing defendant's post-arrest statements through cross-examination of INS agent) (quoting United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) ("a defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination.").

In this regard, the rule of completeness is inapposite. Evidence that is inadmissible is not made admissible by

---

[2]These statements do not include a confession by defendant.

10

1 recitation of the rule of completeness.  See United States v.
2 Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admitted
3 regardless of Rule 106).  As the Ninth Circuit noted in Ortega,
4 203 F.3d at 682, a defendant's exculpatory statements are
5 inadmissible hearsay even if they were made contemporaneously
6 with other inculpatory statements.  Any incriminating statements
7 offered by the government here are admissions by a party-opponent
8 under Rule 801(d)(2) and are, therefore, not hearsay.  If offered
9 by defendant, however, any prior exculpatory statements are
10 inadmissible hearsay.  See Ortega, 203 F.3d at 682.

G.   Demonstrative Aids for Opening Statement

The government may use one or more demonstrative aids in its opening statement.  Defense counsel will be notified and given an opportunity to examine the demonstrative aids with sufficient time for him to object to their use.

H.   Authentication

The video and audio recordings that the government intends to offer as evidence in this case are duplicates of the original recordings.  A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

**VI. CONCLUSION**

The government requests leave to file such additional memoranda as may become appropriate during the course of the trial.

11